UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAHAPETYAN KHACO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:25-cv-1659 CSK P<br><br><br><br>ORDER |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner challenges his continued detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Id.) Petitioner, a native and citizen of Armenia, applied for admission to the United States upon his arrival at the border on October 27, 2024. Petitioner has been detained since that time. Petitioner claims his prolonged detention violates due process under the Fifth Amendment. (Id.) Petitioner requests a bond hearing or, in the alternative, that he be released from detention. (Id.)

Pending before the Court is respondents' motion to dismiss. (ECF No. 11.) For the reasons discussed below, this Court denies respondents' motion to dismiss, grants the petition,

---

[1] Petitioner is proceeding without counsel and paid the filing fee. The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 16.)

1

and orders respondents to provide petitioner with a bond hearing before an immigration judge within seven days of the date of this order.

I.   BACKGROUND

Petitioner is a native and citizen of Armenia who applied for admission to the United States at San Ysidro, California, Port of Entry, on October 27, 2024, without valid documents to enter the United States.  (ECF No. 11-1 at 6.)  The U.S. Department of Homeland Security ("DHS") charged petitioner with being subject to removal for not having a valid entry or travel document at the time of application for admission pursuant to Immigration and Nationality Act ("INA") section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (Id. at 7.)  Petitioner was detained on October 27, 2024 and initially placed into expedited removal proceedings pursuant to INA section 235(b)(1), 8 U.S.C. § 1225(b)(1).  (Id. at 8.)

After entering the United States, petitioner claimed a fear of returning to his native country of Armenia and was interviewed by an asylum officer.  (Id. at 10-14.)   On December 4, 2024, an asylum officer found petitioner credible and found petitioner had a credible fear of persecution, referred to as a positive credible fear determination.  **(**Id. at 10-14.)  On December 6, 2024, DHS issued petitioner a Notice to Appear "[i]n removal proceedings under section 240 of the [INA]", 8 U.S.C. § 1229a,[2] directing petitioner to appear before an immigration judge on December 18, 2024 and charging petitioner as being removable for not having a valid entry or travel document at the time of application for admission pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (Id. at 16-17.)  Petitioner requested parole, but on February 24, 2025, ICE denied petitioner's request for parole.  (ECF No. 22 at 1, 3.)

Petitioner's immigration proceedings were continued for six months from January 15, 2025 to July 15, 2025 to provide petitioner time to find counsel, file his asylum application (I-589), and file original supplemental documents.  (ECF No. 11-2.)  Petitioner states that he has been ready to proceed since July 15, 2025.  (ECF No. 22 at 2.)  The record before the Court indicates that the July 2025 hearing was subsequently postponed multiple dates, including to

---

[2]  Petitioner was therefore transitioned from expedited removal proceedings to standard removal proceedings.

2

October 2025, December 2025, and then most recently, to March 5, 2026, and petitioner was not responsible for these delays. (ECF No. 13; ECF No. 22 at 2.) For example, on December 18, 2025, the immigration judge sua sponte ordered a continuance of petitioner's asylum hearing to March 5, 2026. (ECF No. 13.)

## II. PROCEDURAL BACKGROUND

Petitioner filed the instant verified habeas petition on November 26, 2025, together with a signed declaration.[3] (ECF No. 1.) On December 2, 2025, this Court ordered respondents to file an answer or motion to dismiss within 14 days, and set a briefing schedule for petitioner's reply/traverse to the answer or opposition to the motion to dismiss, and respondents' reply to an opposition to a motion to dismiss. (ECF No. 5.) On December 16, 2025, respondents filed a motion to dismiss. (ECF No. 11.) In the motion to dismiss, respondents stated that petitioner's individual asylum hearing was scheduled for December 24, 2025. (ECF No. 11-2 at 2.) The Court ordered respondents to file a status report addressing the outcome of the December 24, 2025 hearing. (ECF No. 12.) On December 22, 2025, respondents filed a status report informing the Court that the immigration judge sua sponte continued petitioner's asylum hearing to March 5, 2026. (ECF No. 13.)

Because the record indicated that respondents failed to serve petitioner with their motion to dismiss and other filings, on January 6, 2025, this Court ordered respondents to immediately serve petitioner with their motion to dismiss and any other filings not served on petitioner. (ECF No. 17.) Respondents subsequently served petitioner with their motion to dismiss, status report, and other filing. (ECF Nos. 18, 19, 20.) On January 20, 2026, petitioner filed a pleading docketed as "Notice of Change of Circumstances and Supplemental Facts."[4] (ECF No. 21.) On January 23, 2026, petitioner filed an opposition to respondents' motion to dismiss. (ECF No. 22.) Respondents did not file a reply to petitioner's opposition. (See Docket.)

---

[3] A court "may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[4] In this pleading, petitioner also informed the Court that his asylum hearing was continued to March 5, 2026. (ECF No. 21 at 1.)

3

On February 2, 2026, petitioner filed a motion for a temporary restraining order and a motion to appoint counsel. (ECF Nos. 23, 24.) Because the Court addresses respondents' motion to dismiss and resolves the petition on the merits, petitioner's motions for a temporary restraining order and to appoint counsel are denied as moot.

### III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondents' motion to dismiss, or after an answer to the petition has been filed.

### IV. DISCUSSION

Petitioner challenges his prolonged detention without a bond hearing as a due process violation. (ECF No. 1 at 6.) Respondents argues that petitioner's detention is mandated by statute, 8 U.S.C. § 1225(b)(1), and Supreme Court precedent. (ECF No. 11 at 3-4.) Respondents

4

also argue that this district court has repeatedly refused to identify a specific time period after which a noncitizen's detention will be considered presumptively in violation of due process. (Id. at 5.) Respondents also argue that petitioner's detention does not violate due process. (Id. at 6.)

An applicant for admission is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. 8 U.S.C. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that noncitizen is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the noncitizen is to remain detained. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The only statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R. §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [noncitizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

This Court agrees with other district courts that have addressed this issue:

> As the Supreme Court explained in Jennings v. Rodriguez, section 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. 281, 297 (2018). Until consideration of an individual's application for asylum has concluded, "nothing in the statutory text imposes any limit on the length of detention" and "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id.
>
> However, Petitioner's rights are not limited to those laid out by statute. Nothing in the Supreme Court's decision in Jennings precludes Petitioner from bringing this as-applied constitutional

5

challenge. See Nielsen v. Preap, 586 U.S. 392, 420 (2019) (explaining that the Court's decision that mandatory detention statute did not provide a bond hearing "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it"). As the Ninth Circuit identified on remand from Jennings, that Supreme Court case solely addressed whether section 1225 itself permits arbitrary prolonged detention and "declined to reach the constitutional question." Rodriguez, 909 F.3d at 255.

Mohammed v. Warden of California City Det. Ctr., 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (granting petitioner's motion for temporary restraining order and ordering bond hearing within seven days before an immigration judge of petitioner detained for seventeen months pursuant to § 1225(b)). The petition presented compels this Court to reach this question.

The Fifth Amendment Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. To determine if petitioner's procedural due process rights have been violated, courts examine two steps: the first step determines whether there exists a protected liberty interest under the Due Process Clause; and the second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. Petitioner Has a Protected Liberty Interest

The Court turns to the first step to determine whether a protected liberty interest exists under the Due Process Clause. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause

protects." Id. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Petitioner was initially detained by DHS on October 27, 2024, and has remained in custody for over fifteen months since.  "Further, due to Petitioner's asylum claim, he is not subject to expedited removal but rather faces indefinitely prolonged detention while his asylum case is processed.  His case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit provided either party seeks further review. As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest." Mohammed, 2026 WL 192368, at *3 (petitioner with pending asylum claim detained pursuant to § 1225(b)).  The Court concludes that petitioner has a protected liberty interest.  See id.; Tigranyan v. Warden of California City Detention, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), adopted by 2026 WL 130843 (E.D. Cal. Jan. 16, 2026) (concluding petitioner detained pursuant to § 1225(b) with pending asylum claim determined to be credible has a protected liberty interest); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the petitioners who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals").

**B.     Due Process Framework**

Having established that petitioner has a protected liberty interest, the Court must now determine what process is due.  District courts in the Ninth Circuit have applied different tests to make this determination, including the three-factor test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), and other tests.  See Mohammed, 2026 WL 192368, at *3 (describing different tests used by district courts); Abdul-Samed v. Warden of Golden State Annex Detention Facility, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (for prolonged detention of asylum applicant detained under § 1225(b), applying multi-factor test articulated in Lopez v. Garland, 631 F. Supp.

3d 870, 880 (E.D. Cal. 2022) for mandatory detention under 8 U.S.C. § 1226(c)). This Court applies the three-factor test articulated in Mathews, 439 U.S. 319.[5] See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a noncitizen's ongoing detention); Mohammed, 2026 WL 192368, at *3 (applying Matthews). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

        1.     Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner has been detained for over 15 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011), abrogated on other grounds by Rodriguez Diaz, 53 F.4th at 1196; see also Lopez v. Garland, 631 F. Supp. 3d at 880 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

In evaluating this factor, the court also takes into account whether petitioner contributed towards the length of his prolonged detention. See Rodriguez Diaz, 53 F.4th at 1207-08; Arshakyam v. Warden of California City Det., 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026). Some of petitioner's prolonged detention is the result of continuances petitioner requested in his asylum proceedings. The record before the Court indicates that petitioner requested five continuances, from January 15, 2025 to July 15, 2025, totaling six months. (ECF No. 11-2.) In

---

[5] The Court notes that the factors in the other tests district courts have applied overlap to varying degrees with the due process analysis. See Abdul-Samed, 2025 WL 2099343, at *6-8.

his opposition, petitioner states that since July 15, 2025, petitioner has been ready to proceed with his asylum hearing. (ECF No. 22 at 2.) Respondents do not appear to dispute this as they did not submit a reply responding to petitioner's opposition, and respondents separately noted that the immigration judge sua sponte continued the asylum hearing to March 5, 2026. (See Docket; ECF No. 13.) Based on this record, this Court finds that though petitioner's requests for continuances delayed his proceedings, the proceedings have also been delayed through no fault of petitioner, resulting in petitioner's prolonged detention. See also Lopez, 631 F. Supp. 3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.").

While petitioner's next hearing is set for March 5, 2026, this "does not [necessarily] mean that his asylum application will be resolved on that date[.]" See Tigranyan, 2026 WL 91765, at *5. "[A] decision by the [immigration judge] is not the end of petitioner's asylum case since either side may appeal to the BIA and then petition for review by the Ninth Circuit resulting in petitioner remaining in detention." Id.; see Mohammed, 2026 WL 192368, at *3. "Thus, there is no clear end date for petitioner's detention on the record before this court." Tigranyan, 2026 WL 91765, at *5; see Mohammed, 2026 WL 192368, at *3. This Court finds that the circumstances discussed above tip the first Mathews factor in petitioner's favor. See Tigranyan, 2026 WL 91765, at *5 (first Mathews factor weighed in petitioner's favor where petitioner detained almost 15 months pursuant to § 1225(b)(1): "While some of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, additional continuances have also resulted from a clogged immigration court docket."); Arshakyam v. Warden of California City Detention, 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026) (in granting motion for a temporary restraining order for a bond hearing for a petitioner detained for 14 months pursuant to § 1225(b)(1), court found that first Mathews factor weighed "somewhat" in petitioner's favor where the length of petitioner's prolonged detention "largely due to petitioner's own actions").

2. Risk of Erroneous Deprivation

Here, the risk of erroneous deprivation is considerable. See Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6; see also Diouf v. Napolitano, 634 F.3d 1081,

1092 (9th Cir. 2011) ("the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial"), abrogated on other grounds by Rodriguez Diaz, 53 F.4th 1189; Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"). "Civil immigration detention is 'nonpunitive in purpose and effect' and, therefore, only justified when a noncitizen is a flight risk or danger to the community." Mohammed, 2026 WL 192368, at *4 (quoting Zadvydas, 533 U.S. at 690). Petitioner asserts, and respondents do not dispute, that Petitioner has no criminal record, is not a danger, and poses no risk to community safety. (See Petition (ECF No. 1 at 9); Resp. Mot. (ECF No. 11); Pet'r Opp'n (ECF No. 22 at 2).) In addition, an asylum officer found petitioner credible and found that petitioner has a credible fear of persecution. (ECF No. 11-1 at 13.) Where petitioner has not received a bond hearing, has been detained for over fifteen months, his asylum hearing has been postponed multiple times and most recently to March 5, 2026, and it is not clear when detention will end given that even after the asylum hearing, the immigration judge must issue a decision, which either side may appeal to the BIA, and further appeal to the Ninth Circuit, the probable value of this additional procedural safeguard is high.[6] See Maksim v. Warden, Golden State Annex, et al., 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025); Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6. For these reasons, the second Mathews factor weighs in favor of petitioner.

### 3. Government's Interest

Under the third factor, the court weighs the government's interest, "including the function

---

[6] Petitioner's request for parole was denied through a written notification in February 2025. (See ECF No. 22 at 3.) Respondents do not address this issue in their motion to dismiss (ECF No. 11), nor did they respond to petitioner's opposition, which raised the "boilerplate" denial of parole (ECF No. 22 at 1). (See Docket.) Likewise, respondents do not suggest that the denial of petitioner's request provides an adequate procedural safeguard. (See ECF No. 11.) In addition, courts have granted bond hearings to noncitizens like petitioners. See, e.g., Abdul-Samed, 2025 WL 2099343, at *6, 8-9 (finding detention pursuant to § 1225(b) of petitioner in removal proceedings for sixteen months without a bond hearing violates due process and ordering bond hearing; petitioner's parole request was also previously denied). The Court therefore does not further address this issue.

involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.  The Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a bond hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025); Maksim, 2025 WL 2879328, at *5.  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094; see Mohammed, 2026 WL 192368, at *4.  Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden, and respondents do not argue otherwise.  (See ECF No. 11.)  "Thus, there is not even the suggestion, much less a basis in the record to find, any fiscal or administrative burden to the government that would result from providing a bond hearing to petitioner."  Tigranyan, 2026 WL 91765, at *6.  For these reasons, the third Mathews factor weighs in favor of petitioner.

The Court concludes that petitioner's detention is prolonged and he is entitled to a bond hearing before an immigration judge to justify his continued detention.  At the bond hearing, respondents would bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to demonstrate that continued detention is warranted.  See Mohammed, 2026 WL 192368, at *3-4, 5; Tigranyan, 2026 WL 91765, at *5-6, 7; A.E. v. Andrews, 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (where petitioner was detained pursuant to § 1225(b)(1), ordering a bond hearing before an immigration judge); Maksim, 2025 WL 2879328, at *6 (same).

**V.   CONCLUSION**

For the foregoing reasons, the Court denies respondents' motion to dismiss and grants the habeas petition.[7]  As relief, petitioner requests that the Court issue a writ of habeas corpus ordering a bond hearing with a neutral decision maker, or in the alternative, ordering his release.  The Court orders that a bond hearing be held before an immigration judge within seven days of

---

[7] As a result, petitioner's motions for a temporary restraining order (ECF No. 23) and appointment of counsel (ECF No. 24) are denied as moot.

11

the date of this order.  At the bond hearing, respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to demonstrate that his continued detention is warranted.  See Mohammed, 2026 WL 192368, at *3-4, 5; Tigranyan, 2026 WL 91765, at *5-6, 7; A.E. v. Andrews, 2025 WL 1424382, at *4; Maksim, 2025 WL 2879328, at *6.

Accordingly, IT IS HEREBY ORDERED that:

1. Respondents' motion to dismiss (ECF No. 11) is denied.

2. The petition for writ of habeas corpus is granted and the Clerk of the Court shall enter judgment for petitioner.

3. Respondents are ordered to provide petitioner with a bond hearing before an immigration judge within **seven (7) days** from the date of this order where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention.

4. Within **fourteen (14) days** from the date of this order, respondents must file a status report, confirming that a bond hearing was held, providing the outcome of that hearing, and providing an update as to petitioner's status.

5. Petitioner's motion for a temporary restraining order (ECF No. 23) and motion to appoint counsel (ECF No. 24) are denied as moot.

Dated: February 4, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Khac1659.157(2)/2